**I.A. DURBIN, INC., a Florida Corporation, and Betty D. Kail, Plaintiffs-Appellants,**

v.

**JEFFERSON NATIONAL BANK, a national banking association, AIA Atlantic Moving & Storage, A Florida Corporation, Gary Blurman, Fidelity & Deposit Company of Maryland, a Maryland Corporation, Paul Friedman, Peter Gilheany, Juan Gonzalez, Leroy Metz, James Smith, and Stuzin & Camner, P.A., Defendants-Appellees.**

No. 85–5472.

United States Court of Appeals, Eleventh Circuit.

July 21, 1986.

---

See also, D.C., 62 B.R. 139.

Holland & Knight, Roma W. Theus, II, Miami, Fla., for I.A. Durbin.

Marc Birnbaum, Zemel & Kaufman, P.A., Miami, Fla., for Betty D. Kail.

Shelley H. Leinicke, Ft. Lauderdale, Fla., for Metz.

Richard L. Lapidus, Miami, Fla., for Jefferson, AIA, Fidelity, Friedman, Burman, Gonzalez and Stuzin.

Robert M. Klein, Stephens, Lynn, Chernay & Klein, P.A., Miami, Fla., for Stuzin & Camner and Friedman.

Bruce W. Jolly, Ft. Lauderdale, Fla., William H. Ravenell, Dept. of Legal Affairs, Tallahassee, Fla., for Gilheany.

Before HILL and ANDERSON, Circuit Judges, and TUTTLE, ·Senior Circuit Judge.

ANDERSON, Circuit Judge:

Appellants I.A. Durbin, Inc. and Betty D. Kail appeal from the dismissal of their civil rights action under 42 U.S.C.A. § 1983 (West 1981) and pendent state claims. On appeal, they contend that the district court erred in dismissing their § 1983 suit because (1) it is not barred under the doctrines of collateral estoppel and res judicata by the contempt proceeding in the bankruptcy court, (2) the § 1983 claims are ripe for judicial resolution, and (3) the § 1983 action is not duplicative of the state foreclosure action removed to federal court. They also argue that the dismissal of their declaratory relief claims was improper because the issuance of the prejudgment writ of replevin violated the requirements of due process and because the district court had jurisdiction over these claims under 28 U.S.C.A. § 1334(b) (West Supp.1986). Because we find dismissal to be improper in the instant case, we vacate the order of the district court and remand the case to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

Durbin is a construction company located in Broward County, Florida. In March 1984, Jefferson National Bank ("Bank") loaned $500,000 to Durbin. Durbin executed a promissory note to Bank, and as security for the loan, Bank obtained a second mortgage on real estate owned by Durbin, and a security interest in Durbin's contract receivables and household furnishings. Kail, Durbin's president, also signed the note as an accommodation party, and gave Bank a second mortgage on her personal residence.

On July 11, 1984, Bank filed suit against appellants in the Circuit Court for the Seventeenth Judicial Circuit of Florida ("foreclosure action"), alleging that they had defaulted on the loan, and seeking damages for this default and to foreclose on Kail's residence. On July 18, 1984, Bank filed a verified amended complaint which, in addition to the above relief, requested the replevin of the household furnishings in which it claimed a security interest. Pursuant to Fla.Stat.Ann. § 78.068 (West Supp.1986),[1] the court issued a prejudg-

---

1. Fla.Stat.Ann. § 78.068 (West Supp.1986) provides:

 78.068. Prejudgment writ of replevin

 (1) A prejudgment writ of replevin may be issued and the property seized delivered forthwith to the petitioners when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts shown by the verified petition or by separate affidavit of the petitioner.

 (2) This prejudgment writ of replevin may issue if the court finds, pursuant to subsection (1), that the defendant is engaging in, or is about to engage in, conduct that may place the claimed property in danger of destruction, concealment, waste, removal from the state, removal from the jurisdiction of the court, or transfer to an innocent purchaser during the pendency of the action or that the defendant has failed to make payment as agreed.

 (3) The petitioner must post bond in the amount of twice the value of the goods subject to the writ or twice the balance remaining due and owing, whichever is lesser as determined by the court, ·as security for the payment of damages the defendant may sustain when the writ is obtained wrongfully.

 (4) The defendant may obtain release of the property seized under a prejudgment writ of replevin by posting bond within 5 days after serving of the writ in the amount of one and one-fourth the amount due and owing on the agreement for the satisfaction of any judgment which may be rendered against him.

 (5) A prejudgment writ of replevin shall issue only upon the signed order of a circuit court judge or a county court judge.

 (6) The defendant, by contradictory motion filed with the court within 10 days after service of the writ, may obtain the dissolution of a prejudgment writ of replevin unless the petitioner proves the grounds upon which the writ was issued. The court shall set down such motion for an immediate hearing. This motion shall be in lieu of the provisions of subsection (4).

ment writ of replevin. Durbin and Kail did not receive notice of this writ prior to its execution.

At 9:00 a.m. on July 19, 1984, Deputy Sheriff Peter Gilheany began executing the writ of replevin. Leroy Metz, a locksmith, the Bank's vice-president, an attorney from Bank's law firm, and AIA Atlantic Moving & Storage Co. were also present during the execution of the writ. At 3:22 p.m., Durbin filed a voluntary petition for bankruptcy under Chapter 11, 11 U.S.C.A. §§ 1101–1174 (West 1979 & Supp.1986). At approximately 4:30 p.m., Deputy Gilheany was informed of the filing of the bankruptcy petition, and immediately ceased execution of the writ.

Durbin asserted that the seizure of the household furnishings pursuant to the writ of replevin violated the automatic stay of 11 U.S.C.A. § 362 (West 1979 & Supp. 1986).[2] When Bank refused to return the furnishings, Durbin moved to have Gary Burman, Bank's vice-president, AIA Atlantic Moving & Storage Co., Deputy Gilheany, Paul Friedman, a member of Bank's law firm, and Ruth Ann Kopsa held in contempt of the automatic stay ("contempt proceeding"). In an order entered September 10, 1984, the bankruptcy court concluded (1) that the defendants should not be held in contempt with respect to either their prepetition or postpetition seizures since "execution upon the Writ in Rock Creek was prior in time to the filing of the Debtor's voluntary petition" and since "the Sheriff or any other individuals or entities present at the Coral Springs replevin had no notice or knowledge of the filing of the voluntary petition;" and (2) that Bank and its counsel "would have been in contempt of the Court for violating the automatic stay for failing to *immediately* return the Coral Springs personalty [seized after the filing of the petition] but for the fact that they ultimately offered to unconditionally return the Coral Springs Personalty at a time prior to the Hearing." Record on Appeal, vol. 1 at 191 (emphasis in original). The court noted that the defendants had not "intended to wrongfully take possession of Personalty, wrongfully break and enter into premises of the Debtor, or exclude the Debtor from property of the estate." *Id.*

The bankruptcy court also discussed whether the defendants had failed to comply with Fla.Stat.Ann. § 78.10 (West Supp. 1986), which governs the execution of a writ of replevin on property in buildings or enclosures.[3] The court concluded that § 78.10 permitted the sheriff to enter a locked building to execute a writ of replevin if he has "reasonable grounds" to believe that the concealed property is on the premises. Record on Appeal, vol. 1 at 193–96. Finally, the court noted that Florida's statutory provisions for the issuance of a prejudgment writ of replevin had been

---

**2.** Section 362 provides in relevant part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of—

. . . .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. . . .

11 U.S.C.A. § 362(a)(3) (West Supp.1986).

**3.** Fla.Stat.Ann. § 78.10 (West Supp.1986) provides:

78.10. Writ; execution on property in buildings or enclosures

In executing the writ of replevin, if the sheriff has reasonable grounds to believe that the property or any part thereof is secreted or concealed in any dwelling house or other building or enclosure, the sheriff shall publicly demand delivery thereof; and, if it is not delivered by the defendant or some other person, he shall cause such house, building, or enclosure to be broken open and shall make replevin according to the writ; and, if necessary, he shall take to his assistance the power of the county. However, if the sheriff does not have reasonable grounds to believe that the property to be replevied is secreted or concealed in any dwelling house or other building or enclosure, the plaintiff may petition the court for a "break order" directing the sheriff to enter physically any dwelling house or other building or enclosure. Upon a showing of probable cause by the plaintiff, the court shall enter such "break order."

found constitutional by the Florida Supreme Court in *Gazil, Inc. v. Super Foods Services, Inc.*, 356 So.2d 312 (Fla.1978), and refused to find that the statute or the sheriff's execution of the writ was "unconstitutional in any manner." Record on Appeal, vol. 1 at 197.

In its October 3, 1984 order awarding attorney's fees to Durbin, however, the bankruptcy court explained that its prior decision had been confined to the issue of contempt:

> In regards to the legal issues presented in these proceedings, and in regards to the Coral Springs home in particular, the Court notes that its conclusions of law are confined to the narrow issue of contempt and it expressly does not decide any legal or factual issues regarding any other remedies or causes of action that the Debtor-in-Possession may have under state or federal law.

*Id.* at 205.[4]

In August 1984, Durbin moved to have the state foreclosure action removed to bankruptcy court pursuant to 28 U.S.C.A. § 1452 (West Supp.1986). The state action was removed to federal court and referred to the bankruptcy court. In its answer, Durbin raised several counterclaims against Bank, alleging that Bank had committed trespass to real and personal property, wrongful conversion, and civil theft; had interfered with advantageous business relationships and with contractual relationships; and had unlawfully replevied Durbin's property "in substantial violation of the requirements of the Florida Replevin Statute and the Constitution of the United States of America and as such were without any lawful authority rendering the writ of replevin null and void and all action taken pursuant thereto unlawful." Record on Appeal, vol. 3 at 517–24.[5]

On October 1, 1984, Durbin filed an action in the bankruptcy court under 11 U.S.C.A. § 542 (West 1979 & Supp.1986) for turnover of the household furnishings held by Bank. On December 7, the bankruptcy court ordered Bank to deliver this property to Durbin. Record on Appeal, vol. 3 at 607.

In February 1985, appellants filed the instant suit in the United States District Court for the Southern District of Florida against Bank, its vice-president, Gary Burman, AIA Atlantic Moving & Storage Co., Fidelity & Deposit Company of Maryland, the surety on the replevin bond posted by Bank, Deputy Gilheany, Leroy Metz, the locksmith who opened Durbin's houses, and Bank's law firm and the attorneys involved in the issuance and execution of the writ of repelvin ("appellees").[6] They alleged that the issuance and execution of the writ of replevin had deprived them of the right to due process under the Fifth and Fourteenth Amendments, the right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments, and the right to equal protection of the laws under the Fourteenth Amendment, in violation of 42 U.S.C.A. § 1983 (West 1981). They also raised pendent state claims for trespass to real and per-

---

**4.** The parties have indicated that Durbin has appealed from the September 10, 1984 order, and that this appeal is currently pending before the United States District Court for the Southern District of Florida, *I.A. Durbin, Inc. v. Jefferson National Bank*, Case No. 85–6211–CIV–EDB.

**5.** The parties have noted that the bankruptcy court has struck Durbin's counterclaims, and that Durbin's appeal from that order is currently pending in the United States District Court for the Southern District of Florida, *Jefferson National Bank v. I.A. Durbin, Inc.*, Case. No. 85–6458–CIV–Spellman.

**6.** Appellants also named the Florida Attorney General as a defendant in the instant case because he "is charged by law with the enforce-

ment and administration of the laws of the State of Florida, and therefore has an interest in this proceeding and the issues herein involved." Record on Appeal, vol. 1 at 4. Relying on *Mayo v. National Truck Brokers, Inc.*, 220 So.2d 11, 13 (Fla.1969), the district court concluded that Fla. Stat.Ann. § 86.091 (West Supp.1986) does not require joinder of the Attorney General as a necessary party in an action challenging the constitutionality of a state statute, and therefore granted the Attorney General's motion to dismiss. Appellants do not challenge the propriety of the dismissal of the Attorney General on appeal, and we therefore express no opinion on this question.

sonal property, wrongful conversion, civil theft, tortious interference with advantageous business relationships and with contractual relationships, and unlawful replevin of their property. They sought compensatory and punitive damages, declaratory relief, and attorney's fees.

Appellants then moved to withdraw reference of the foreclosure action and the action for turnover of the property seized pursuant to the writ of replevin from the bankruptcy court and to consolidate these actions with their civil rights suit in the district court. The district court, however, denied their motion, concluding that while the proceedings in the bankruptcy court "may involve some issues pertinent to the instant action," they had "simply failed to demonstrate sufficient cause for not allowing the Bankruptcy Court to proceed, within the limits of its authority, and then having this Court go ahead, supplied with the findings and rulings made by the Bankruptcy Court." Record on Appeal, vol. 3 at 595–96.

Appellees filed motions to dismiss the § 1983 action on two grounds: (1) that the findings of the bankruptcy court in the contempt proceeding barred the instant suit under the doctrines of collateral estoppel and res judicata; and (2) that since the bankruptcy court had found that they had acted in good faith, and since they are entitled to qualified immunity in a § 1983 action, such a finding precluded liability in the instant case.

The district court concluded that the instant case should be dismissed. The court relied on several grounds for dismissing appellants' claims seeking damages for the civil rights violations and the pendent state claims. The court first noted that since Bank had been required to post a replevin bond as security for the damages that Durbin might suffer if the writ were obtained wrongfully, appellants may be able to obtain relief in the foreclosure action (which was then pending in the bankruptcy court) that would fully compensate them for any injuries caused by appellees' actions in the issuance and execution of the prejudgment writ of replevin, and therefore concluded that the damage claims in the instant case are premature. Record on Appeal, vol. 3 at 688–89. The court also observed that if the bankruptcy court determined that appellants' claims were without merit in the proceeding against the replevin bond, such a finding would be given the effect of collateral estoppel or res judicata in the instant case, and that if appellants were awarded judgment in the proceeding against the replevin bond, appellees could raise that judgment in the instant case as an affirmative defense of satisfaction. *Id.* at 689.

The court next pointed out that in the contempt proceeding, the bankruptcy court had already considered "the issue of whether replevin was obtained wrongfully or in bad faith in the state court action," and concluded that "[t]o the extent that the Bankruptcy Court has made a final determination ... as to the issue of wrongful conduct in obtaining and executing the writ of replevin, that determination would bar re-litigation of that issue in this court." *Id.* at 689–90. Finally, the court concluded that even if a final determination had not yet been made in the bankruptcy court with respect to the issue of damages or the question of good faith, the suit should still be dismissed because it was "duplicative" of the foreclosure action pending in the bankruptcy court. *Id.* at 690–91.

The court also held that appellants were not entitled to declaratory relief. The court first noted that the Florida Supreme Court in *Gazil, Inc. v. Super Food Services, Inc.*, 356 So.2d 312 (Fla.1978), had held that § 78.068 satisfies the requirements of due process, and then indicated that it "believe[d]" that the Florida Supreme Court was "correct" and that appellants "have not alleged sufficient facts or made sufficient arguments to show that Section 78.068 provides less in the way of due process than is required in a replevin statute." *Id.* at 692. Turning to appellants' Fourth Amendment claim, the court observed that the question of "[w]hether section 78.10 permits and authorizes searches and sei-

zures which are so unreasonable as to violate the Fourth Amendment is an issue fairly raised," but concluded that the dismissal of the damage claims "leaves this Court without jurisdiction to hear a claim brought under 28 U.S.C. § 2201." *Id.* at 692–93. The court then dismissed *both* the Fourth Amendment claim and the due process claim for lack of subject matter jurisdiction. *Id.* at 694.

## II. DISCUSSION

■ Appellants contend that the dismissal of their damage claims was improper because (1) these claims are not barred by the doctrines of res judicata or collateral estoppel, and (2) the § 1983 suit is not duplicative of the state foreclosure action in the bankruptcy court.[7] They also assert that the district court erred in dismissing

the declaratory relief claims since the court erroneously concluded that § 78.068 satisfies the requirements of due process and since the court did have jurisdiction over these claims under 28 U.S.C.A. § 1334(b) (West Supp.1986), which provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings ... arising in or related to cases under Title 11." We address each contention in turn.

### A. *The Preclusive Effect of the Contempt Proceeding*

■ Appellants' first contention is that the instant case is not barred under the doctrines of res judicata or collateral estoppel by the contempt proceeding in the bankruptcy court. We find merit in this argument.[8]

---

**7.** The district court also dismissed the damage claims on the ground that they were "premature" since appellants might be fully compensated for their injuries by proceeding against the replevin bond. Appellants contend, however, that these claims "comprehend live controversies between adverse litigants that are ripe for adjudication." Appellants' Brief at 20. We agree that the damage claims are ripe for adjudication.

The ripeness doctrine requires that " '[t]he controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.... It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " *Federal Election Commission v. Lance,* 635 F.2d 1132, 1138 (5th Cir.1981) (en banc) (quoting *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937)), *appeal dismissed and cert. denied,* 453 U.S. 917, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981)). *See also International Tape Manufacturers Association v. Gerstein,* 494 F.2d 25, 27 (5th Cir.1974). In particular, the question of whether a particular case is ripe turns on " 'the fitness of the issues for judicial decision' " and " 'the hardship to the parties of withholding court consideration.' " *Thomas v. Union Carbide Agricultural Products Co.,* — U.S. ——, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985) (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)). *See also Johnson v. Sikes,* 730 F.2d 644, 648 (11th Cir.1984).

Applying these principles to the instant case, we conclude that the damage claims are ripe for

decision. The first element (the fitness of the issues for judicial decision) is clearly satisfied since the issues concerning the damage claims arise out of a "definite and concrete" controversy between adverse litigants. In addition, appellants have been directly injured as the result of appellees' actions since they were deprived of their property for several months.

**8.** For the purpose of this appeal, we will assume *arguendo,* but expressly not decide, that a contempt proceeding in a bankruptcy court has res judicata and collateral estoppel effect in subsequent litigation. We note, however, that other courts have disagreed as to whether a contempt proceeding in a bankruptcy court is a core or non-core proceeding. *Compare, e.g., Omega Equipment Corp. v. John C. Louis Co. (In re Omega Equipment Corp.),* 51 Bankr. 569, 571–74 (D.D.C.1985) (contempt proceeding is non-core proceeding), *In re MAB Foods, Inc.,* 49 Bankr. 73, 75 (E.D.N.Y.1985) (same), *with, e.g., Better Homes of Virginia, Inc. v. Budget Service Co. (In re Better Homes of Virginia, Inc.),* 52 Bankr. 426, 428–31 (E.D.Va.1985) (contempt proceeding to enforce automatic stay is core proceeding); *In re Crum,* 55 Bankr. 455, 458–59 (Bankr.M.D.Fla. 1985) (same); *In re DePew,* 51 Bankr. 1010, 1012–14 (Bankr.E.D.Tenn.1985) (same). If a contempt proceeding were a core proceeding, the bankruptcy court could enter a final contempt order, *see, e.g.,* 28 U.S.C.A. § 157(b)(1) (West Supp.1986); *Rosen-Novak Auto Co. v. Honz,* 783 F.2d 739, 742 (8th Cir.1986); *Piombo Corp. v. Castlerock Properties (In re Castlerock Properties),* 781 F.2d 159, 161 (9th Cir.1986), and this order would be res judicata in any subsequent proceeding, *see, e.g., Sandoz v. Merchants Trust & Savings Bank (In re Owners of Harvey*

■ Res judicata or claim preclusion refers to the preclusive effect of a judgment in foreclosing relitigation of matters that were litigated or could have been litigated in an earlier suit. *See, e.g., Migra v. Warren City School District Board of Education,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984); *Interstate Pipe Maintenance, Inc. v. FMC Corp.,* 775 F.2d 1495, 1497 (11th Cir.1985). In order for the doctrine of res judicata to bar a subsequent suit, four elements must be present: (1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both cases. *See, e.g., Hart v. Yamaha-Parts Distributors, Inc.,* 787 F.2d 1468, 1470 (11th Cir.1986); *Ray v. Tennessee Valley Authority,* 677 F.2d 813, 821 (11th Cir.1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983).

■ Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit. There are several prerequisites to the application of collateral estoppel: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. *See, e.g., Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352, 1360 (11th Cir.1985); *Precision Air Parts, Inc. v. Avco Corp.,* 736 F.2d 1499, 1501, 1504 (11th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 966, 83 L.Ed.2d 970 (1985).

■ Turning to the issue of res judicata, we conclude that the civil rights action is not barred under the doctrine of res judicata by the contempt proceeding, since the causes of action in the two proceedings are not the same.[9] The principal test for determining whether the causes of action are the same is whether the primary right and duty are the same in each case. *See, e.g., Ray,* 677 F.2d at 821; *White v. World Finance of Meridian, Inc.,* 653 F.2d 147, 150 (5th Cir. Unit A 1981).[10] In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form. *See, e.g., Ray,* 677 F.2d at 821; *White,* 653 F.2d at 150.

Applying these principles to the instant case, we hold that the contempt proceeding and the § 1983 suit do not involve the same cause of action. In the contempt proceeding, the primary right at issue was Durbin's right, under 11 U.S.C.A. § 362(a)(3) (West Supp.1986), to prevent appellees from taking possession of the property after the filing of the bankruptcy petition. *See, e.g.,* 2 *Collier on Bankruptcy* ¶¶ 362.-

*Oil Center),* 788 F.2d 275, 277–78 (5th Cir.1986) (concluding that under the doctrine of collateral estoppel, bankruptcy court's prior turnover order precluded bank from relitigating the essential issues underlying its liability for conversion). If, on the other hand, a contempt proceeding were a non-core proceeding, the bankruptcy court could only issue proposed findings of fact and conclusions of law, which would be subject to de novo review by the district court, 28 U.S.C.A. § 157(c)(1) (West Supp.1986); *Honz,* 783 F.2d at 742; *Castlerock Properties,* 781 F.2d at 161, and such proposed findings would not be entitled to res judicata effect in subsequent litigation because there would have been no final judgment on the merits, *see, e.g., Memphis-Shelby County Airport Authority v. Braniff Airways (In re Braniff Airways),* 783 F.2d 1283, 1287 (5th Cir.1986) (normal res judicata principles apply in bankruptcy proceedings, including final judgment requirement); 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.419[3.–1], at 626–27 (2d ed. 1984) (same).

9. Since the absence of this element prevents the application of the doctrine of res judicata to the instant case, we do not consider whether the other three conditions are satisfied here.

10. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

03–.04 (15th ed. 1986). The primary right in the civil rights action, on the other hand, was appellants' rights to be free from unreasonable searches and seizures and to due process in the taking of their property. Since the substance of these two causes of action is different, the application of res judicata is inappropriate.

We also hold that the civil rights action is not barred by the doctrine of collateral estoppel because the contempt proceeding and the civil rights action do not involve identical issues. The only issue that the district court suggested might have been decided in the contempt proceeding was the question of whether the replevin of appellants' property was obtained "wrongfully or in bad faith in the state court action." Record on Appeal, vol. 3 at 689–90. We conclude, however, that the district court erred in finding that the good faith inquiry in a contempt proceeding is the same as the qualified immunity defense in a § 1983 action.[11] We also find that the question of whether the defendants had complied with the requirements of due process and § 78.-10 in the issuance and execution of the writ was not actually and necessarily decided in the contempt proceeding.

The good faith inquiry in the contempt proceeding focused on the question of whether the defendants had willfully or intentionally violated the automatic stay during the execution of the writ of replevin:

> None of the Respondents can be said to have willfully or intentionally violated the automatic stay with respect to either the Pre-Petition Seizure or Post-Petition Seizure. Since execution upon the Writ in Rock Creek was prior in time to the filing of the Debtor's voluntary petition, the Pre-Petition Seizure (by any and all

Respondents) is clearly not contumacious. Since the Sheriff or any other individuals or entities present at the Coral Springs replevin had no notice or knowledge of the filing of the voluntary petition, the Post-Petition Seizure (by any and all Respondents) is also not contumacious.

Record on Appeal, vol. 1 at 126. In other words, the contempt proceeding addressed the question of whether the defendants had knowledge or notice of the filing of the bankruptcy petition when they executed the writ of replevin.

The qualified immunity defense in § 1983 suits, however, is an objective rather than subjective test. In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. Thus, appellees would be immune from liability in the § 1983 action unless appellants could prove that appellees' actions violated "clearly established" constitutional rights. *See, e.g., Flinn v. Gordon*, 775 F.2d 1551, 1553 (11th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1972, 90 L.Ed.2d 656 (1986); *Harden v. Adams*, 760 F.2d 1158, 1165 (11th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 530, 88 L.Ed.2d 462 (1985). Since the good faith inquiry in a contempt proceeding is not the same as the qualified immunity defense in a § 1983 action, we hold that collateral estoppel does not bar the instant case.

---

11. Because of our disposition of this issue, we do not express any opinion on the question of whether in a § 1983 suit, private actors are entitled to the good faith defense accorded to state officials. We do note, however, that the Supreme Court expressly reserved this question in *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 942 n. 23, 102 S.Ct. 2744, 2756 n. 23, 73 L.Ed.2d 482 (1982), and that other courts have disagreed about the availability of such a defense, *compare Howerton v. Gabica*, 708 F.2d 380, 385 n. 10 (9th Cir.1983) (concluding that there is "no good faith immunity under section 1983 for private parties who act under color of state law to deprive an individual of his or her constitutional rights"), *with Buller v. Buechler*, 706 F.2d 844, 850–53 (8th Cir.1983) (private actors entitled to qualified immunity under § 1983); *Folsom Investment Co. v. Moore*, 681 F.2d 1032, 1037–38 (5th Cir.Unit A 1982) (same).

We also find no merit in appellees' contention that the bankruptcy court determined (1) that § 78.068 satisfied the requirements of due process, and (2) that they had complied with the requirements of § 78.10. In order for the doctrine of collateral estoppel to foreclose relitigation of an issue in a subsequent proceeding, that issue must have been actually and necessarily decided in a prior suit. *See, e.g., Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979); *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Although the bankruptcy court did mention these issues in passing, the resolution of these questions was unnecessary to its determination of whether the defendants should be held in contempt for violating the automatic stay of § 362(a)(3). Rather, the dispositive issue in the contempt proceeding was whether the defendants had taken possession of Durbin's property *after* the filing of the bankruptcy petition. If they had done so, then they would have violated the automatic stay, and the bankruptcy court could have held them in contempt if they had willfully and intentionally violated the automatic stay. *See, e.g.,* 2 *Collier on Bankruptcy* ¶ 362.11 (15th ed. 1986). The question of whether the defendants had complied with the requirements of due process or the state statute would be irrelevant to this inquiry. Moreover, the bankruptcy court, in a subsequent decision, expressly limited its September 1984 order to the issue of contempt, and stated that the earlier decision did "not decide any legal or factual issues regarding any other remedies or causes of action that [Durbin] may have under state or federal law." Record on Appeal, vol. 1 at 205. Under these circumstances, we hold that the question of whether the defendants in the contempt proceeding had complied with the requirements of due process and of § 78.10 was not actually and necessarily decided in the contempt proceeding.

### B. *Foreclosure Proceeding*

The district court also decided in conclusory fashion that even if the doctrines of res judicata and collateral estoppel were inapplicable, the instant case should be dismissed because the foreclosure action pending in the bankruptcy court raised similar issues.[12] We hold, however, that since the § 1983 suit is not duplicative of the foreclosure action, the district court abused its discretion in dismissing the instant case.

It is well established that "as between federal district courts, ... the general principle is to avoid duplicative litigation." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976); *see also Hoover v. United States Department of the Interior,* 611 F.2d 1132, 1136–37 (5th Cir.1980). This doctrine "rest[s] on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). Although no precise test has been articulated for making this determination, *see, e.g., Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246, the general rule is that a suit is duplicative of another suit if the parties, issues and available relief do not significantly differ between the two actions. *See, e.g., Complaint of Bankers v. Chatterjee,* 636 F.2d 37, 40 (3d Cir.1980); *Hoover,* 611 F.2d at 1137; *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.,* 572 F.Supp. 1210, 1213 (N.D.Ill.1983). Trial courts are afforded broad discretion in determining whether to stay or dismiss litigation in order to avoid duplicating a proceeding already pending in

---

**12.** As noted above, *see supra* note 5, the parties have advised us that after the dismissal of the instant case, the bankruptcy court dismissed Durbin's counterclaims in the foreclosure action, which might involve some of the same issues presented in the instant case. Since the possible collateral estoppel effect of the dismissal of Durbin's counterclaims was neither considered by the district court nor argued on appeal, this question is not before us.

another federal court. *See, e.g., Kerotest Mfg.,* 342 U.S. at 183–84, 72 S.Ct. at 221–22; *Landis v. North American Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936); *CTI-Container Leasing Corp. v. Uiterwyk Corp.,* 685 F.2d 1284, 1288 (11th Cir.1982), *cert. denied,* 459 U.S. 1173, 103 S.Ct. 820, 74 L.Ed.2d 1017 (1983); *Hoover,* 611 F.2d at 1136–37.

Applying these principles to the instant case, we conclude that the district court abused its discretion in dismissing the § 1983 suit. First, the parties are substantially different in the two proceedings. In the foreclosure action, the plaintiff is Bank and appellants are the defendants. In the § 1983 action, appellants are the plaintiffs, but the defendants, in addition to Bank, include Deputy Gilheany, the Bank's vice-president Gary Burman, the locksmith Leroy Metz, the Bank's law firm (Stuzin & Camner, P.A.), and the attorneys allegedly involved in the replevin of the household furnishings (Paul Friedman, Juan Gonzalez and James Smith).

Moreover, the issues in the § 1983 suit differ significantly from those in the state foreclosure action. For example, in order for appellants to recover in the § 1983 action, they must show that appellees were acting under color of state law. *See generally Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Cobb v. Georgia Power Co.,* 757 F.2d 1248 (11th Cir.1985). This requirement is satisfied by a showing that the deprivation of the federal right resulted from "the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor" either "because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar,* 457 U.S. at 937, 102 S.Ct. at 2754. *See also Scott v. Dixon,* 720 F.2d 1542, 1545 (11th Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984). There is of course no such requirement in the foreclosure action.

In addition, we cannot ascertain from the present record whether the foreclosure action will involve appellants' Fourth Amendment or due process claims.

Since the parties and issues in the two actions are significantly different, we find that the dismissal of the damage claims constituted an abuse of discretion.[13]

### C. *Dismissal of the Declaratory Relief Claims*

 Finally, appellants contend that the district court erred in dismissing their declaratory relief claims since § 78.068 does not meet the requirements of due process and since the district court had jurisdiction over these claims under 28 U.S.C.A. § 1334(b) (West Supp.1986), which provides that district courts shall have non-exclusive jurisdiction of "all civil proceedings ... arising in or related to cases under Title 11." We agree that the dismissal of these claims was improper, but several reasons persuade us to decline to reach the merits of the Fourth Amendment and due process claims.

---

**13.** Our holding that the dismissal of the instant case was an abuse of discretion does not necessarily preclude the district court on remand from granting a stay of the instant case based on the general discretionary power of district courts to stay proceedings in the interest of justice and in control of their dockets. *See, e.g., Landis,* 299 U.S. at 254–55, 57 S.Ct. at 165–66; *Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541, 544–46 (5th Cir.1983); *Hines v. D'Artois,* 531 F.2d 726, 733–37 (5th Cir.1976). Courts have held that a discretionary stay is justified only if, based on a balancing of the parties' interests, there is a clear inequity to the suppliant who is required to defend while another action remains unresolved and if the order granting a stay can be framed to contain reasonable limits on its duration. *See, e.g., Landis,* 299 U.S. at 254–59, 57 S.Ct. at 165–68; *GATX Aircraft Corp. v. M/V Courtney Leigh,* 768 F.2d 711, 716 (5th Cir.1985); *Hines,* 531 F.2d at 733. On remand, the district court is also not precluded from determining that the foreclosure proceeding should be consolidated with the instant case. We of course express no opinion on the propriety of staying the instant case or of consolidating it with the foreclosure proceeding.

First, the opinion below does not clearly indicate whether the district court reached the merits of appellants' due process claim. The district court initially suggested that the decision of the Florida Supreme Court upholding the constitutionality of § 78.068 was correct, but later dismissed both the Fourth Amendment and due process claims for lack of subject matter jurisdiction. Thus, we cannot determine whether the district court found the due process claim to be without merit and then dismissed the Fourth Amendment claim for lack of jurisdiction or whether it dismissed both claims for lack of jurisdiction. To the extent that the dismissal of the declaratory relief claims rested on the absence of jurisdiction, we conclude that dismissal was improper. *See, e.g., Gay Student Services v. Texas A & M University,* 612 F.2d 160, 166 (5th Cir.) (where district court has jurisdiction under 28 U.S.C.A. § 1343 and 42 U.S.C.A. § 1983, "the separate remedy available through declaratory judgment may also proceed"), *cert. denied,* 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980); *Pettigrew v. Womble,* 589 F.Supp. 242, 247 (D.S.C. 1984) (same).

Second, if the district court did reach the merits of the due process claim, this issue was inadequately briefed in the court below and on appeal, and the district court's discussion of this claim was cursory.

Finally, the general principle of avoiding unnecessary decision of constitutional questions counsels against reaching the merits of the Fourth Amendment and due process claims. It is possible in the instant case that the decision in the foreclosure action will eliminate the need to decide the constitutional claims. For example, if appellants receive the relief they desire in the foreclosure action, they might not press their constitutional claims in the instant case. We therefore hold that the dismissal of the declaratory relief claims was improper. However, we decline to exercise our jurisdiction to reach the Fourth Amendment and due process claims, and to the extent that the district court decided these issues, its order is vacated.

## III. CONCLUSION

For the foregoing reasons, the order of the district court dismissing this case is vacated, and the case is remanded to the district court for further proceedings consistent with this opinion.

VACATED and REMANDED.