In re OPTICAL TECHNOLOGIES, INC., Recomm Operations, Inc., Recomm Enterprises, Inc., Recomm Int'l Display Corp., Ltd., Automated Travel Center, Inc., Debtors.

Bankruptcy Nos. 96–0805–8P1, 96–1200–8P1, 96–1201–8P1, 96–1202–8P1, 96–1203–8P1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 10, 1997.

**990**

John D. Goldsmith, Tampa, FL, for Debtors.

David L. Eaton, Chicago IL, Zala Forizs, St. Petersburg, FL, for Creditors Committee.

## ORDER DENYING CONFIRMATION OF THE THIRD AMENDED JOINT PLAN OF REORGANIZATION

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration in this Chapter 11 case is the confirmation of the Third Amended Joint Plan of Reorganization (Plan) proposed by the Debtors, the Official Committee of Unsecured Creditors (Committee) and certain finance companies (collectively the "Plan Proponents"), and the Objections to confirmation filed by those entities comprising and known as "Certain Mississippi Pharmacists and Veterinarians" (Doc. Nos. 425B, 507); those entities comprising and known as the Oklahoma Plaintiffs (Doc. No. 448B); Dr. Clifford Addison, *et al.* (Doc. No. 452); those entities known as Certain Recomm Customers (Doc. No. 485); Raymond Manklow (Doc. No. 510A); Pat L. Hubert, D.V.M., *et al.* (Doc. No. 519); those entities comprising and known as the "Alabama, Arkansas, Texas and Tennessee Plaintiffs" (Doc. No. 524); Cled T. Click, *et al.* (Doc. No. 561); and Anthony V. Bass, O.D., P.C. *et al.* (Doc. No. 562). The Court reviewed the Objections, the record and heard argument of counsel and finds as follows:

The Debtors in these administratively consolidated cases are Recomm International Display Corp., Ltd. (International Ltd.), incorporated in 1990, Recomm Operations, Inc. (Operations), Recomm Enterprises, Inc. (Enterprises) and Automated Travel Center, Inc. (Automated) incorporated in 1993, and Optical Technologies, Inc. (Optical), incorporated in 1994. All are Florida corporations with the exception of International Ltd. which is a Canadian corporation.

The Debtors were founded by Jean Francois Vincens (Vincens) and Raymond Manklow (Manklow). Vincens and Manklow also founded Recomm International Display Corporation (Display Corp.), a California corporation, Recomm International Corporation (International Corp) a Texas corporation, and Recomm International Display, Ltd. (Display Ltd.) a Texas limited partnership (collectively the "Non–Debtor Affiliates"). In January 1994, Vincens and Manklow sold their interests in the Debtors to Jesse Carter, Robert Kellish (Kellish) and Sandra Braddock (Braddock). Kellish and Braddock are also the sole shareholders of Non–Debtor Affiliate Display Corp. Display Corp. is allegedly the parent of International Corp. and the general partner of Display Ltd.

Prior to the commencement of these cases, the Debtors and one or more of the Non–Debtor Affiliates were engaged in the business of marketing and distributing nationwide electronic bulletin boards (Boards) and kiosk systems (Kiosks) and selling advertising for the Boards to pharmacists, optometrists and veterinarians (the "Recomm Customers"). The record before this Court is unclear as to which entities actually marketed and distributed the Boards and Kiosks and also which entities actually sold the advertising agreements. The Debtors, however, contend that over 95% of all of the Boards were sold by Non–Debtor Affiliates, Display Ltd. and Display Corporation.

In any event, the Debtors and the Non–Debtor Affiliates primarily sold the Boards and Kiosks to third-party leasing companies (the "Finance Companies"), although some Boards and Kiosks were sold directly to Recomm Customers. In those instances where the Finance Companies purchased the Boards and Kiosks, the Finance Companies would then lease the Boards and Kiosks to the Recomm Customers. As part of each of these transactions, at least one of the Debtors and the Recomm Customer would execute an advertising agreement (Advertising Agreement), pursuant to which the Debtors

agreed to (1) remit to the Recomm Customer monies in consideration for the placement of advertising on the Recomm Customer's Board; and (2) provide monthly a preprogrammed diskette containing specialized customer store information and advertising that had been purchased by third-party advertisers. The base of customers who have either leased or purchased the Boards and Kiosks and who had Advertising Contracts with the Debtors is referred to by the Plan Proponents as the "Network".

In mid–1995, the Debtors stopped paying quarterly advertising fees to a number of Recomm Customers. In turn, many Recomm Customers stopped paying the Finance Companies under their leases. As a result, hundreds of lawsuits were filed by various Recomm Customers against the Debtors, certain finance companies and/or some of the Debtors' present and former officers and employees.

On January 22, 1996, Debtor, Optical filed its voluntary Petition under Chapter 11 of the Bankruptcy Code. Shortly thereafter, on January 31, 1996, Debtors, Operations, Enterprises, International Ltd. and Automated also filed Petitions for relief under Chapter 11. The cases were administratively consolidated pursuant to an Order entered by this Court on February 9, 1996. (Doc. Nos. 9, 21).

Schedule B of the Schedules of Assets and Liabilities filed for each of the Debtors reflects that within the two years prior to the commencement of these cases, Enterprises acquired an interest as sole stockholder in the other Debtors, Operations, Display Ltd., Automated and Optical. Schedule B filed for each Debtor also reflects that none of the Debtors had an interest in any of the Non–Debtor Affiliates at the time of the filing of these cases.

On May 8, 1997, however, the Debtors filed a Complaint in the Circuit Court of the Thirteenth Judicial Circuit, In and For Hillsborough County, Florida (Circuit Court), Case No. 97–3285 (the State Court Action), naming Kellish and Braddock as defendants and seeking a declaratory judgment that the Non–Debtor Affiliates, Display Corp., International Corp. and Display Ltd. were effectively merged and consolidated into the Debtor, Operations. On the same date, Braddock and Kellish filed an Answer, admitting the allegations of the Complaint. One day later, on May 9, 1997, the Debtors filed a Motion for Summary Judgment which was unopposed by Braddock and Kellish. On May 14, 1997, the Circuit Court entered a Final Judgment, which provides in part,

> 2. This Court declares that there has been a defacto merger of Recomm International Display Corporation, a California corporation ("Display corp."), Recomm International Corporation, a Texas corporation ("International corp."), and Recomm International Display, Ltd., a Texas limited partnership ("Display Ltd.") into Recomm Operations, Inc. ("Operations") effective January 1, 1995 such that all of the assets, rights, capital, franchises, powers, liabilities, claims and causes of action of Display Corp., International Corp., and Display Ltd. were consolidated and merged into Operations effective January 1, 1995.

Final Judgment, pp. 1–2.

Approximately two months prior to the filing of the State Court Action, on March 4, 1997, the Plan Proponents filed the Plan which is presently under consideration. In order to overcome some of the objections to confirmation, the Plan Proponents filed their First Modification to Third Amended Plan of Reorganization (Modification) on September 19, 1997.

The Third Amended Plan, as modified, proposes the substantive consolidation of the Debtors and provides for eight classes of claims. Classes C, D, E, F and H, all consisting of unsecured claimants, are of particular importance to the issues raised by the Objections to confirmation. Class C consists of Board and Kiosk lessees and their guarantors, who are parties to Advertising Agreements. Class D consists of Board and Kiosk lessees and their guarantors, who did not enter into Advertising Agreements. Pursuant to the Modification, those lessees whose lessors are not participating in proposing the Plan have been removed from Classes C and D and have been placed in Class H which

was created by the Modification. Class E consists of Board and Kiosk owners holding unsecured claims against any of the Debtors. Class F consists of unsecured claims against any of the Debtors which are not included in Classes C, D or E.

Under the Plan, the Debtors propose to sell their assets to In–Store Promotions, Inc. (In–Store), an entity formed specifically to purchase the Debtors' assets. Alternatively, if In–Store fails to close on the sale, the Debtors' assets will be transferred to the Liquidating Trustee who will operate the Debtors' business for a minimum of five months while attempting to locate a buyer for the assets.

The most valuable and only significant asset proposed to be sold by the Debtors is the Network. As mentioned earlier, however, over ninety-five percent of the Boards comprising the Network were sold, not by the Debtors, but by the Non–Debtor Affiliates, Display Corporation and International Corp. Nonetheless, the Plan Proponents contend that the Debtors own the Network due to a *de facto* merger of Display and International Corp. into the Debtor Operations, effective January 1, 1995. The importance of the existence of the *de facto* merger is that without the merger of these two entities into the Debtors, there are no assets for the Debtors to sell. In any event, In–Store is to purchase the Debtors' assets for approximately $6.4 million plus issuing 30% of the stock of In–Store to the Liquidating Trustee.

The unsecured creditors are to receive thirty percent of the common stock of In–Store, with a value to be capped at $1,000,-000, plus a pro rata share of a percentage of the Debtors' causes of action, cash and assets. Classes C, D and H will also receive a proportional share of future advertising revenues of In–Store, unless the creditor elected not to be bound by the In–Store Promotion and Servicing Agreement. A Recomm Customer that makes no election is deemed to have elected to enter into the Servicing Agreement.

In addition, each Recomm Customer whose Finance Company agrees to participate in the Plan, is to receive certain reductions or discounts on their monthly lease payments.

The discounts, with an aggregate value of approximately $30,000,000, consist of reducing interest rates; forgiving arrearages; waiving attorney's fees incurred in connection with claims against the lessees; and clearing any bad credit histories related to the lease payments. The discounts are calculated on a sliding scale, based on the type of equipment leased, when the lease was entered into, and the amount of arrearage under the lease.

In consideration for these concessions, the Plan provides for the following broad release,

> ... all Persons including but not limited to each of the Debtors and the Estates and each of the Lessees shall be deemed to unconditionally remise, release, and forever discharge the Participating Lessors and their past and present officers, directors, shareholders, employees, agents, attorneys, parents, subsidiaries, affiliates, predecessors in interest (direct or indirect), successors and assignees, and their heirs, executors, trustees, administrators, successors and assigns of any such Persons and Entities but excluding, particularly, David Neff and any other such individual who is a former employee, officer or director of both (i) the Debtors and (ii) a Participating Lessor (hereinafter collectively the "Released Lessor Parties"), of and from any and all manner of actions, causes of action, suits, claims, counterclaims, liabilities, obligations, defenses, and demands whatsoever, at law or in equity, if any, which any of them ever had, now has, or hereafter can, shall, or may claim to have against any of the Released Lessor Parties for or by reason of any cause, matter, or thing whatsoever, arising from the beginning of the world to the Confirmation Date, relating to the business or operations of the Debtors, the Leases and the Advertising Contracts, provided however, that each Participating Lessor covenants not to pursue any legal action against any assignor or any other party for which it obtained the Leases, or which was in any way involved in such Leases, that would in any fashion result in a Participating Lessee being subjected to suit or demand by such assignor or such other party arising out of or relating to

any Lease in which a Participating Lessee claims an interest on the Effective Date. . . .

In addition, each of the Lessees agrees to release any causes of action, claims, suits, counterclaims, liabilities, obligations, defenses, and demands whatsoever, in law or in equity, if any, against the Released Lessor Parties with respect to the revised Leases resulting or arising out of actions, activities, or events occurring prior to the Confirmation Date, relating to the business or operations of the Debtors; the Leases and the Advertising Contracts.

Plan, pp. 46–47.

Upon confirmation, the claims of the Recomm Customers against the lessors participating in proposing the Plan will be deemed released and the Recomm Customers will be enjoined from pursuing their claims against the lessors, whether or not the Recomm Customer consented to the Plan. Pursuant to the Modification, the Plan is modified to provide that the Debtors will not receive a discharge.

This Court recognizes the benefits which would be afforded to many creditors by this Plan, along with the support in favor of confirmation of the Plan. Upon carefully reviewing the Plan and the many objections presented by the Objecting Creditors, this Court finds that although the Plan obtained the approval of the requisite number of creditors holding the requisite amount of allowed claims and generally meets all the prerequisites for confirmation as set forth in 11 U.S.C. § 1129(a), the Plan cannot be confirmed because of two major flaws which are indispensable linchpins of the Plan.

First, the feasibility of the Plan depends on the propriety of the Plan provisions which provide for a permanent injunction barring the claims of not only creditors of these Debtors but the claims of parties who had no dealings with the Debtors and who are not even asserting any claims against the Debtors. These provisions are indispensable since without them, the Finance Companies are not willing to fund the Plan. Second, the Plan requires the transfer of all of the Debtors' rights to In–Store, which brings into question, what rights the Debtors have to the customer base, the Network, established by the Non–Debtor Affiliates. The occurrence of a transfer of the Network by the Non–Debtor Affiliates to the Debtors, whether by sale or assignment or by an involuntary transfer as a result of a judicial fiat, is an indispensable part of the Plan. Without such a transfer, the Plan is not viable.

■ Considering first the injunction and release provisions, Section 524(e) of the Bankruptcy Code provides,

Except as provided in subsection (a)(3) of this section, discharge of a debt of a debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

11 U.S.C. § 524(e).

■ Plans proposing third-party injunctions have been considered in several cases in the past, with some obtaining judicial approval and some not. Those courts approving third-party injunction provisions have relied on Section 105 of the Bankruptcy Code, which empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of ... [Title 11]." 11 U.S.C. § 105. Section 105 is the Bankruptcy Code's version of the All–Writs Act, 28 U.S.C. § 1651. It cannot be gainsaid that Section 105 is not an independent source of power but, rather, was established as only an aid in exercising other specific provisions and powers created by the Bankruptcy Code. *See Matter of Fesco Plastics Corp., Inc.,* 996 F.2d 152, 154 (7th Cir.1993). In the context of the confirmation process in a Chapter 11 case, Section 105 has been used to assist in the rehabilitation of the reorganized debtor and to help salvage a viable economic entity.

Many courts have narrowly interpreted the language of Section 524(e) to mean that a bankruptcy court has no power to affect the liability of third parties on an obligation of the debtor. *See e.g. In re Lowenschuss,* 67 F.3d 1394 (9th Cir.1995), *cert. denied* 517 U.S. 1243, 116 S.Ct. 2497, 135 L.Ed.2d 189 (1996). *In re Zale Corp.,* 62 F.3d 746, 756 (5th Cir.1995). Some courts have taken the position that the plain language of Section 524(e), however, provides only that a discharge does not affect the liability of third

parties and does not restrain the power of the bankruptcy court to otherwise grant a release to a third party. *Matter of Specialty Equipment Companies, Inc.*, 3 F.3d 1043, 1047 (7th Cir.1993)(bankruptcy courts may release nondebtors from their debts if effected creditors consent). This interpretation is consistent with the language of Section 105 which is broadly written and allows all orders necessary to effectuate a reorganization, including permanently enjoining actions of third parties which "would adversely affect property of the estate and would interfere with reorganization." *See MacArthur Co. v. Johns–Manville Corp.*, 837 F.2d 89, 93 (2d Cir.), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988); *In re Hardy*, 97 F.3d 1384, 1389 (11th Cir.1996). "While a third-party release ... may be unwarranted in some circumstances, a per se rule disfavoring all releases in a reorganization plan would be similarly unwarranted, if not a misreading of the statute." *Specialty Equipment Co., supra* at 1047.

■ Under appropriate circumstances, this Court may use its powers under Section 105 to issue a third-party injunction and release in order to effectuate a reorganization plan. In *In re Master Mortgage Investment Fund, Inc.*, 168 B.R. 930, 934 (Bankr. W.D.Mo.1994), the Court described a non-exclusive list of factors that the court can examine to determine whether a third-party injunction is appropriate,

(1) There is an identity of interest between the debtor and the third party, usually an indemnity relationship, such that a suit against the nondebtor is, in essence, a suit against the debtor or will deplete assets of the estate.

(2) The non-debtor has contributed substantial assets to the reorganization.

(3) The injunction is essential to reorganization. Without the [sic] it, there is little likelihood of success.

(4) A substantial majority of the creditors agree to such injunction, specifically, the impacted class, or classes, has 'overwhelmingly' voted to accept the proposed plan treatment.

(5) The plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

*Id.* at 935.

Although this Court agrees that under circumstances where these factors are met, the issuance of a third-party injunction may be appropriate, the issuance of a third-party injunction is inappropriate in the instant cases. This is because where, as here, a plan of reorganization provides for the total liquidation of the debtor, the factors of *Master Mortgage* cannot be met. In a liquidation case, substantial assets cannot be contributed to the reorganization because the debtor is not reorganizing. *See In re Swallen's, Inc.*, 210 B.R. 123, 127 (Bankr.S.D.Ohio 1997). Also, in a liquidation case, a third-party injunction is not essential to the continued operation of the debtor because the purpose of such an injunction is to aid in the rehabilitation of an ongoing business. *See Swallen's, supra; see also In re Regency Realty Associates*, 179 B.R. 717 (Bankr.M.D.Fla.1995)(debtor's general partners not entitled to injunction against nondebtor third parties where plan was a total liquidation plan). In addition, the Plan does not provide for the payment of substantially all claims of the classes affected by the injunction. Finally, the Debtors have not sufficiently demonstrated that each third-party which is to benefit from the injunction and release has a sufficient "identity of interest" with the Debtors. This Court, therefore, is satisfied that the Plan violates the requirements of 11 U.S.C. § 1129(a)(1) insofar as this Court's exercise of its power under 11 U.S.C. § 105 to issue the third-party injunction, as provided in the Plan, is not warranted by the facts surrounding these cases.

■ Even assuming, without conceding, that this conclusion is incorrect or that the Plan's third-party injunction and release provisions are removed from the Plan, the Court is still satisfied that the Plan cannot be confirmed for the second reason outlined earlier. There is no competent evidence in this record which would warrant the conclusion that these Debtors acquired any cognizable interest in the assets of the Non–Debtor Affiliates. The Debtors presented no evidence to

establish the transfer of any assets to these Debtors except the Final Judgment entered by the Circuit Court which declares the de facto merger of the Non–Debtor Affiliates with the Debtor, Operations.

First, it is noteworthy that although the merger is contended to have been effective as of January 1, 1995, the Debtors failed to schedule an interest in the Non–Debtor Affiliates in the Schedules of Assets filed with the Petitions. Moreover, the Liquidation Analysis, attached as Exhibit F to the Disclosure Statement does not disclose an ownership interest in the Non–Debtor Affiliates or in the Network. If indeed there was a de facto merger resulting in the Non–Debtor Affiliates' assets being consolidated with Operations, then the Liquidation Analysis would have reflected those assets, even if the liquidation value was zero.

Next, the binding effect of the Final Judgment relied upon by the Debtors depends on the applicability *vel non* of the doctrines of res judicata and collateral estoppel. In addition to the foregoing, the most important consideration should be given to the concept of due process. This record leaves no doubt that none of the Non–Debtor Affiliates were named as defendants in the State Court Action. Neither were the erstwhile principals of the non-Debtor Affiliates named as defendants. The Debtors only named as defendants Braddock and Kellish the current officers of the Debtors. The Circuit Court had no jurisdiction over the Non–Debtor Affiliates, Manklow and Vincens and it is elementary and self-evident that no judgment can be binding on parties not subject to the jurisdiction of the court which rendered the judgment. It logically follows from the foregoing that the principles of res judicata and collateral estoppel cannot apply. See *In re St. Laurent*, 991 F.2d 672, 675–676 (11th Cir.1993); *I.A. Durbin, Inc. v. Jefferson National Bank*, 793 F.2d 1541, 1549 (11th Cir.1986).

Having concluded that the Final Judgment entered by the Circuit Court has no binding effect for the reasons stated above, the Non–Debtor Affiliates were not effectively merged into the Debtors and the assets of the Non–Debtor Affiliates were not transferred to the Debtors. No evidence being in the record which would warrant a finding of a de facto merger, the Plan provision contemplating the sale is meaningless. In addition, this Court is satisfied that the third-party injunction and release provisions are also unacceptable. For these reasons, the Plan cannot be confirmed.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Objections to Confirmation are hereby sustained in part, to the extent consistent with this opinion. It is further

ORDERED, ADJUDGED AND DECREED that confirmation of the Third Amended Joint Plan of Reorganization be, and the same is hereby denied. It is further

ORDERED, ADJUDGED AND DECREED that parties in interest are hereby granted leave to file within fifteen (15) days of the date of the entry of this Order, a plan of reorganization and disclosure statement if they deem the same to be appropriate. In the event a plan of reorganization and disclosure statement are filed, a hearing on the disclosure statement will be promptly scheduled. In the event the Debtors fail to file a plan of reorganization and disclosure statement within the time allotted, a hearing will be scheduled to consider the dismissal or conversion of these cases.