**In re SWALLEN'S, INC., Debtor.**

**Bankruptcy No. 95–14476.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

June 10, 1997.

Thomas Coffey, Cincinnati, OH, for Debtor.

Donald J. Rafferty, Cincinnati, OH, for the UCC.

Robert A. Goering, Timothy J. Hurley, Cincinnati, OH, for the Swallen Family.

Alan J. Statman, Cincinnati, OH, for Fifth Third.

James R. Cummins, Kevin E. Irwin, Cincinnati, OH, for Debenture Holders.

## DECISION AND ORDER ON MOTION TO APPROVE SWALLEN FAMILY SETTLEMENT

BURTON PERLMAN, Bankruptcy Judge.

Debtor in this Chapter 11 case had been in the business of operating retail department stores. Shortly after filing its chapter 11 case, debtor discontinued operations, and this is a liquidating Chapter 11 case. Debtor's business had commenced in the 1940s, and until a short time prior to its bankruptcy filing, debtor had been owned by members of the Swallen Family. (The term "Swallen Family" will be used herein to refer to a number of individuals and trusts which sold their stockholdings in the debtor corporation prior to the bankruptcy filing.) By an order entered in this court, the Unsecured Creditors Committee (hereafter "UCC") was authorized to investigate and prosecute claims such as those which might be asserted against the Swallen Family. The UCC has now entered into a Settlement Agreement with the Swallen Family, and here, pursuant to F.R.B.P. 9019(a), seeks approval of that Agreement. Certain debenture holders, creditors in the case, oppose the settlement. These creditors had filed suit in the Hamilton County Court of Common Pleas under the caption *Stelter et. al. v. Swallen et. al.* We will herein refer to these creditors as the "Stelter Plaintiffs."

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(A).

Approximately six months before the petition date, the Swallen Family entered into a series of three interrelated Stock Purchase Agreements (A, B, and C), dated as of April 13, 1995, and certain other related agreements with a group of investors headed by Sharad Budhev (collectively, we will refer to this group of investors as the "Purchasers")[1]. These three agreements shall be referred to herein collectively as the "Stock Purchase Transactions". As a consequence of the Stock Purchase Transactions,

---

1. The special purpose entity established by the purchasers to effectuate their acquisition of the

Debtor was known as Yogis Burry, Inc. ("Yogis").

the members of the Swallen Family sold all or substantially all of their equity interest in the Debtor to the Purchasers. The following briefly describes the three separate Stock Purchase Agreements:

In accordance with Stock Purchase Agreement "A", the Purchasers paid to the Swallen Family $1 million in cash.

In accordance with Stock Purchase Agreement "B", the Debtor executed and delivered to the Swallen Family a Promissory Note payable on demand in the amount of $1,527,-000 (the "$1.527 Note"). Upon the closing of the Stock Purchase Transaction, the selling shareholders (consisting principally of the Swallen Family) made a demand for payment under the $1.527 Note, and were paid the full amount thereof.

In accordance with the terms of Stock Purchase Agreement "C", Sigona, Inc. ("Sigona"), an entity owned and controlled by Yogis and the Purchasers, executed and delivered to the Swallen Family a Promissory Note in the principal amount of $1,975,938.88 (the "$1.975 Note") which was due in April 1999. In conjunction therewith, the Debtor caused Fifth Third Bank to issue an irrevocable stand-by letter of credit, Letter of Credit No. 9842 (the "LC"), for the benefit of the Swallen Family to secure payment of the $1.975 Note. As a condition to Fifth Third Bank's issuance of the LC and to secure the LC, the Debtor posted a certificate of deposit (the "CD") with the Fifth Third Bank in the same amount as the $1.975 Note. It is in respect of claims assertable on behalf of the debtor by the UCC against the members of the Swallen Family, stemming from the Stock Purchase Transactions, that the Settlement Agreement was reached.

The principal terms of the Settlement Agreement between the UCC and the Swallen Family are the following:

1. The Swallen Family shall deliver to the Debtor the Settlement Fund of $1,730,-200.00. The money for the Settlement Fund will be made available via a draw on the LC and liquidation of the Fifth Third Bank CD, which is currently held as collateral for the LC. The Settlement Fund mentioned above will be placed in escrow for distribution to the Debtor and its creditors upon satisfaction of certain conditions.

2. The primary condition to release of the Settlement Fund is confirmation of a Plan containing the following condition precedent:

Confirmation of a plan in Debtor's Chapter 11 case, case # 95–14476, which contains provisions which fully release the Swallen Family or any of them, together with their heirs, agents, attorneys, successors or assigns from any and all liability, present or future, related in any way to Swallen's Inc., in whole or in part, including but not limited to claims arising out of the sale of the stock in Swallen's, Inc. to Sigona, Inc. and certain other parties, on or about April 13, 1995 and claims for preferential or fraudulent transfer. The said release shall include, but not be limited to a full release of the Swallen Family from liability in Case # A9601477 in the Common Pleas Court of Hamilton County, or in the alternative a permanent injunction enjoining any and all parties from continuation of the "Stelter" litigation or institution of any similar suit as to the Swallen Family and from any claim or demand by any other entity, as a result of the said sale or a Letter of Credit issued in favor of Stanley A. Mathews, Trustee, from the Fifth Third Bank, dated April 13, 1995. This Release shall further include any claim in connection with Swallen's, Inc. by any creditor whomsoever as to the Swallen Family. The monies held in escrow as provided herein shall be payable to the Debtor when the Order of the Bankruptcy Court Confirming a Plan providing for said release, becomes non-appealable, or if there is an appeal, such Confirmation has been fully and finally affirmed.

There was an additional condition to the settlement, that this Court enforce the automatic stay with respect to the Stelter litigation. This condition has been fulfilled, by our Order entered February 28, 1997.

 It is approval of this Settlement Agreement that the UCC, supported by the Swallen Family, seeks. The Settlement

Agreement can be considered as consisting of two parts. The first is the monetary amount to be received by the UCC from the Swallen Family. The other part is the release/injunction against continuation of litigation against the Swallen Family by individuals such as the Stelter Plaintiffs. With regard to the first part, the monetary amount to be paid to the UCC by the Swallen Family, both sides to the present controversy agree that the applicable criteria are the following:

> ... most circuit courts that have considered the issue have adopted a uniform standard by which the bankruptcy judge or other trial officer should be governed in the hearing on a motion to approve a compromise. According to these cases, the court should consider: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

> In other words, therefore, a compromise will be approved when it is both "fair and equitable" and in the best interests of the estate.

10 *Collier on Bankruptcy* ¶ 9019.02 (15th Rev. ed.1996) (footnotes omitted).

As urged by the parties we have applied these criteria to the facts of the matter before us, and conclude that so far as the monetary amount of the Settlement Agreement is concerned, the compromise is fair and equitable, in the best interests of the estate, and could be approved by this court. We deal with this aspect of the Settlement Agreement in conclusory fashion because of the outcome of our consideration of the release/injunction part of the Settlement Agreement. The release/injunction dimension of the Settlement Agreement requires a consideration by this Court of its power to enjoin third parties altogether, and, more specifically, whether such an injunction is appropriate in the circumstances of this case. Debtor and the Swallen Family urge upon the Court that it has the power to approve the Settlement Agreement, including the pro-

vision broadly releasing the claims against the non-debtor Swallen Family and/or the permanent injunction which in the alternative grants the Swallen Family the same relief. The power of the Court to grant such relief, say those advocating approval of the Settlement Agreement, is to be found in § 105 of the Bankruptcy Code. The Stelter Plaintiffs argue to the contrary that § 524(e) of the Bankruptcy Code deprives the Court of the power to grant such relief.

The release of non-debtor parties by a Bankruptcy Court has been the subject of considerable litigation in the bankruptcy courts. In *In re Master Mortgage Investment Fund Inc.,* 168 B.R. 930, 934–937 (Bankr.W.D.Mo.1994), Judge Koger summarized the state of the law. The circuits have split on the question, with the Ninth and Tenth circuits concluding that any effort to release or protect a non-debtor third-party contravenes § 524(e) of the Bankruptcy Code. For this proposition, the court in *Master Mortgage* cited *In re Western Real Estate Fund, Inc.,* 922 F.2d 592, 601 (10th Cir.1990), as amended *Abel v. West,* 932 F.2d 898 (10th Cir.1991); *In re American Hardwoods, Inc.,* 885 F.2d 621, 625 (9th Cir.1989). Other courts do allow injunctions or releases in favor of non-debtors in Chapter 11 cases. The court in *Master Mortgage* adopted the more permissive view, contending that a per se rule prohibiting injunctions and releases is unwarranted. At the same time the court said "that a permanent injunction is a rare thing, indeed, and only upon a showing of exceptional circumstances ..." should it be granted. 168 B.R. at 937. The court in *Master Mortgage* said that courts which grant such relief consider the following criteria:

> (1) There is an identity of interest between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate.

> (2) The non-debtor has contributed substantial assets to the reorganization.

> (3) The injunction is essential to reorganization. Without the [sic] it, there is little likelihood of success.

(4) A substantial majority of the creditors agree to such injunction, specifically, the impacted class, or classes, has "overwhelmingly" voted to accept the proposed plan treatment.

(5) The plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

168 B.R. at 934–935 (footnotes omitted).

The court in *Master Mortgage* found all these factors to be present in the case before it, and confirmed the plan before it which incorporated the permanent injunction arrived at in the settlement between the interested parties.

■ Applying the foregoing principles to the facts of the present case, even assuming adoption of the more permissive view of our power to approve injunctions or releases in Chapter 11 cases, the provision submitted to this Court in the proposed Settlement Agreement cannot be approved. In that provision the UCC proposes to grant a permanent injunction or its equivalent to the non-debtor members of the Swallen Family, without limitation, against any claim which might be asserted against its members by any one by reason of the Stock Purchase Agreements. None of the criteria spelled out in *Master Mortgage* is met in that provision of the Settlement Agreement. First, there is no identity of interest between the debtor and the Swallen Family. They are independent and adverse parties. We consider the second and third criteria together, for both of them assume that the injunction is in aid of rehabilitation of an ongoing business. The second criterion looks to whether the non-debtor has contributed substantial assets to the reorganization. The third criterion, that the injunction is essential to reorganization, and without it there is little likelihood of success, contemplates that the injunction makes it possible for the debtor to continue in operation. The Settlement Agreement cannot meet either the second and/or the third criterion because there is no ongoing business, but rather the debtor is liquidating.

The fourth criterion, that a substantial majority of the creditors agreed to the injunction, is derived from two kinds of cases. The first kind is exemplified by *In the Matter of Specialty Equipment Companies*, 3 F.3d 1043 (7th Cir.1993). In that case, Crooks, holder of a debenture, objected to confirmation of a plan that provided for the release of third-party non-debtors. The release was pursuant to a settlement agreement negotiated for a year by representatives of several interests, including the debtors, as well as a committee representing a majority of the holders of the debenture issue to which Crooks belonged. Thus, even prior to the filing of the bankruptcy, a majority of the debenture holders had agreed to the injunction. After the bankruptcy was filed, an official unsecured creditors committee was appointed to represent all unsecured creditors including debenture holders, such committee consisting of two trade creditors and six debenture holders. When this committee recommended the plan, it was clearly speaking in favor of a majority of the class. Another kind of case relied upon by the *Master Mortgage* court in connection with the fourth criterion is the mass tort case exemplified by *In re A.H. Robins Co.*, 880 F.2d 694 (4th Cir.1989) and *In re Johns–Manville Corp.*, 68 B.R. 618 (Bankr.S.D.N.Y.1986), where the plans were largely negotiated on behalf of the mass tort claimants and the plan was overwhelmingly supported by those claimants. No one has represented in the case before us that there is such general approval of the release/injunction provision of the Settlement Agreement by creditors, including debenture holders.[2] The fourth criterion therefore is not met. Finally, the fifth criterion is obviously not met here, for the plan does not provide a mechanism for the payment of all or substantially all of the claims of the class or classes affected by the injunction.

---

**2.** It may be beneficial for the participants in the present case to observe other aspects of the *Specialty Equipment* case. There releases would be given to the non-debtor only by creditors voting in favor of the plan; those abstaining or voting against the plan were not barred from taking such action against the non-debtor as they deemed appropriate. In addition, in that case unsecured claims were paid in full.

The UCC in its Reply Memorandum on the present motion attempts to deal with the § 524(e) issue by asserting that the Stelter Plaintiffs are precluded from questioning the release/injunction regarding non-debtors in the Settlement Agreement because of a prior decision of this court. The prior decision to which reference is made appeared in our Order on UCC Motion to Stay State Court Litigation, entered February 28, 1997. The UCC says that the claims urged by the Stelter Plaintiffs there, including that their claims cannot be the subject of a § 105 injunction, were rejected in that decision, and therefore, by reason of collateral estoppel, res judicata, or law of the case, the Stelter Plaintiffs are barred from arguing that position. The prior Order, however, had to do with the scope of the automatic stay provision, § 362, of the Bankruptcy Code. It expressly excluded consideration of the availability of a § 105 injunction. The argument of the UCC in its Reply Memorandum is misplaced. In the Order entered February 28, 1997 we did not deal with the question of the power of this Court to grant injunctions against non-debtors, or whether, if we had the power, it should be exercised in the circumstances of this case.

The Motion to Approve Swallen Family Settlement filed by the UCC is denied.

So Ordered.