**In re SHAW AERO DEVICES, INC.,
Shaw Aero Realty Corporation,
Debtors.**

Nos. 01–18137–9P1, 01–18136–9P1.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

July 8, 2002.

350

Stephen R. Leslie, Stichter, Riedel, Blain, Prosser, PA, Tampa, FL, for Debtors.

Hans C. Beyer, Stears, Waver, Miller, et al., Tampa, FL, for Petitioning Creditors.

### ORDER ON OBJECTIONS TO NON-DEBTOR INJUNCTION PROVISIONS OF THE CONFIRMED PLAN
### (Doc. Nos. 133 & 138)

ALEXANDER L. PASKAY, Chief Judge.

The Chapter 11 Plan of Reorganization of these Debtors was confirmed on February 7, 2002. The present controversy centers on Article 11.3 of the Plan, which provides that the injunctive provisions of the Order of Confirmation shall extend to certain third-party non-debtors. Specifically, Article 11.3 of the Plan provides in pertinent part as follows:

> Entry of the Confirmation Order will constitute and effectuate a permanent injunction, enjoining the prosecution by any Person or Entity against the Released Parties, whether directly, derivatively or otherwise, of any such Claim, obligation, suit, judgment, damage, right, remedy, cause of action, charge, cost Debt, indebtedness, or Liability which arose or accrued on or prior to the Effective Date or was or could have been asserted against any of the Released Parties. Each of the Released Parties shall have the right to independently seek enforcement of this release provision. This release provision is an integral part of the Plan and is essential to its implementation.

Additionally, the Order of Confirmation further provides as follows:

> [C]ounsel for the Debtors announced on the record and in open Court at the February 6, 2002 hearing the following revisions to the Plan: ... (b) notwithstanding the non-Debtor injunctive provisions in Article 11.3 of the Plan, the non-Debtor parties who are protected by such provisions shall be limited to James R. Shaw, and no non-Debtor injunction or release therein shall apply to any Holder of an Allowed Claim if the Reorganized Debtors default under the Plan without curing such default in accordance with the provisions of the Plan.

Finally, the Notice of Confirmation Regarding Debtors' Joint Chapter 11 Plan of Reorganization states as follows:

> 3. Any objections to the non-debtor injunction provisions of Article 11.3 as confirmed, and only to the non-debtor injunction provisions of Article 11.3, by any party in interest that has not previously filed such an objection shall be filed with this Court on or before February 18, 2002, and

served on counsel for the Debtors so as to be actually received on or before the close of business on February 18, 2002. If any such objection is timely filed and served, the Court will by separate Order set a hearing regarding same.

James R. Shaw (Mr. Shaw) is the principal and sole shareholder of both of the Debtors.

Dyna–Air Engineering Corp. (Dyna Engineering) and Aeromarine Industries (Aeromarine) (together, "Objectants") who are creditors in this case filed their respective Objections. In due course, the Objections were set down for preliminary hearing. After having heard extensive argument by the Objectants and by the Debtors, this Court entered an Order on March 13, 2002, scheduling a final evidentiary hearing. The Order directed that the hearing was to focus on the limited issue of the extent of the involvement of Mr. Shaw in the reorganized debtors and whether or not Mr. Shaw is merely a "passive owner."

Notwithstanding the clear instructions in the Order, at the final evidentiary hearing, the Objectants insisted that the Debtors be required to stipulate for the record that the Debtors rely on the law governing injunctive provisions of a Plan of Reorganization protecting non-debtors in a Chapter 11 case. In light of the precise framing of the issue by the Order, this Court declined to involve itself with the request of the Objectants and announced that the final evidentiary hearing would proceed as scheduled on the issues outlined in the Order of March 13, 2002. In the Order of March 13, 2002, this Court stated, "the Debtors proffered on the record proof concerning four of the non-exclusive list of factors considered by courts when determining the propriety of the relief requested consistent with *In re Master Mortgage Investment Fund, Inc.*, 168 B.R. 930, 934 (Bankr.W.D.Mo.1994). Based on the posi-

tion taken by the parties, the only disputed factual issue related to the extent of the involvement *vel non* of James Shaw...." In light of this statement, the record is clear that the Debtors already stated their position regarding the other four factors and that the Objectants did not dispute their stated position.

The facts relevant to the issues outlined above as established by the Exhibits offered and admitted into evidence can be summarized as follows. Mr. Shaw was, and still is, the Chairman of the Board and Chief Executive Officer of Shaw Aero Devices, Inc. (Shaw Aero), one of the Debtors. He is also the Chairman of the Board and President of Shaw Aero Realty Corp. (Shaw Realty), the other Debtor.

In 1999, Mr. Shaw through Shaw Aero, formed a corporation known as Dyna–Air Corporation (Dyna–Air) for the purpose of acquiring all assets of Dyna Engineering. As part of the transaction, Dyna–Air assumed a liability owed by Dyna Engineering to Aeromarine. The total purchase price was $1,150,000. Part of the purchase price was $350,000 cash paid at closing, with the balance covered by the execution of a Promissory Note in the principal amount of $800,000 executed by Dyna–Air, the buyer, to Dyna Engineering. *See* Objectant's Exh. 1, copy of the Promissory Note. The Promissory Note was guaranteed by Mr. Shaw as President of Shaw Aero, and also individually. *See* Objectant's Exh. 1, copy of "Guaranty of Payment." As part of the sale and purchase, Shaw Aero also executed a Promissory Note in favor of Aeromarine in the principal amount of $1,200,000. *See* Exh. 2, copy of Promissory Note.

## EXTENT OF MR. SHAW'S INVOLVEMENT IN THE AFFAIRS OF THE REORGANIZED DEBTORS

The Debtor, Shaw Aero, is an engineering company that markets, designs, devel-

op, and manufacturers sundry products for the airline industry. The Debtor also designs and develops oil reservoirs, which includes gauges. For example, the Debtor is developing water waste systems and pressure refueling for aircrafts. Since the tragedy of the TW 800 disaster in Long Island, at the urging of the FAA, the Debtor is involved in the process of developing a flame resistant system to prevent arcing which might ignite fuel of an aircraft.

Mr. Shaw has been with the Debtors for over 40 years, and he is the 100 percent stockholder of the corporations. As noted earlier, he currently serves as the Chairman of the Board of Shaw Aero. He previously acted as President until recently, and now the current the President of Shaw Aero is Doug Patton. The other officers of Shaw Aero are Grant Westerman, Chief Financial Officer; Phil Jones, Director of Marketing and Engineering; Mike Dill, Director of Manufacturing; and Dennis Downes, in-house counsel.

Mr. Shaw is also the President and sole stockholder of Shaw Realty, the corporation who owns the real property on which Shaw Aero's manufacturing facilities and offices are located. The Debtor has approximately 215 employees and has expected revenue of $34.5 million for this year. It is without dispute that Mr. Shaw is well recognized in the industry and is a member of several professional societies.

The documentation introduced into evidence concerning his actual involvement in the affairs of the Debtor are the diaries maintained or prepared by his secretary for the years 2000, 2001 and part of 2002 (Objectant's Exhs. 3, 4, and 5). Viewing the entries in the diaries in a vacuum, one might conclude that his involvement in the affairs of the Debtors and the Reorganized Debtors is minimal. This is only one-half of the loaf, and for the reasons stated below, this Court concludes that the actual entries are misleading.

Mr. Shaw is not an hourly employee whose time is controlled by a time clock. He is actively involved in all major projects that are the bread and butter of these corporations. According to the testimony of Mr. Shaw, these developments might involve a development of one of the systems described earlier for a new generation of aircraft being manufactured, which is a long, drawn out process. According to Mr. Shaw, it takes five to seven years from the first design of a system to accomplish a project. It typically takes two years after a design to develop a prototype, and three years to actually put the system into production.

Shaw Aero is also involved in retrofitting existing aircraft. When an aircraft manufacturer, such as Boeing, embarks on a project of retrofitting part of its fleet, Mr. Shaw is actively involved. It takes an average of six to eight months just to reach the stage of negotiation and the presentation of a system to the requesting company. Mr. Shaw is, of course, actively involved in the entire process.

Mr. Shaw spends 40 to 50 hours a week devoted to the service of the Debtor. And, while he clearly is not involved in the daily operation of the business, he is a vital part of the operation. In the year 2001, he had only one eight-day vacation. Mr. Shaw indicated that he tries to take two-weeks of vacation per year. In sum, it is clear and this Court is satisfied that Mr. Shaw is far more than a passive owner of the Debtors. He is an active, important leader of the operation of the Debtors.

Although it appears from this record that Mr. Shaw's involvement in the pending litigation in Ft. Lauderdale by Dyna Engineering, on which he is also named as a defendant by virtue of the guarantee, is

not really extensive and time consuming, the protection granted to him by an injunction would assure, at least temporarily until the resolution of that litigation and the litigation commenced by Aeromarine, that he will not have to respond personally to the primary obligation of Dyna–Air.

Based on the record, this Court is satisfied that the Debtors have established with the requisite degree of proof, that Mr. Shaw's participation is important, and that his active participation is necessary to assure the continued success of this enterprise and ultimately his assistance is necessary for the Debtors to consummate the Plan of Reorganization.

The injunction sought facially appears to be a permanent injunction, which ordinarily would not be appropriate in the true sense of the word "permanent." However, under the facts development here, Mr. Shaw is entitled to be protected but only for so long as payments to Dyna Engineering and Aeromarine are not in default and as long as the allowed claims of both entities are paid in full with interest. From this it follows that the injunction is limited, in light of the fact that the Plan provides for full payment of claims of Dyna Engineering and Aeromarine, and therefore, the guarantee of Mr. Shaw would not survive after the claims are paid in full since there will no longer be a remaining and enforceable legal obligation of the prime obligor, the obligation that Mr. Shaw guaranteed. This Court finds that based upon the record, the Debtors have satisfied four out of the five factors that this Court should consider in determining whether a third-party injunction is appropriate.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Objections (Doc. Nos. 133 and 138) be, and the same are hereby, overruled. It is further

ORDERED, ADJUDGED AND DE-CREED that pursuant to Article 11.3 of the Plan, as confirmed, James R. Shaw be, and the same is hereby, granted the protections afforded therein, provided that the Debtors are able to substantially consummate the Plan and as set forth above. In the event of a default, the injunction provision shall be removed and both Dyna Engineering and Aeromarine may continue to pursue their claim against Mr. Shaw.